Next this morning, Case 18-485, McDonough v. Smith. Mr. Katyal. Thank you, Mr. Chief Justice, and may it please the Court. McDonough's Section 1983 suit claimed that Smith brought and maintained criminal proceedings against him based on fabricated evidence. The closest common-law analogy to that claim is malicious prosecution, which also focuses on the wrongful initiation and maintenance of criminal proceedings. Smith has never pointed to a better or any other analogy, and a common law, the statute of limitations for malicious prosecution Mr. Katyal, is your claim alleged of require the finding of probable cause? No. Or the absence of it? It doesn't. There's two different constitutional violations, Justice Sotomayor. We have identified both in our complaint and in the courts below as well as here. The Fourth Amendment, which does have a probable cause element, and the district court at page 56A said McDonough's claim is the absence of probable cause. And so with respect to the Fourth Amendment, with respect to the Fifth Amendment, the elements don't actually talk about probable cause. Instead, they talk about is there a reasonable likelihood that the indictment So why do you need an acquittal? That at least is the government's position. Yours is not quite that. But why, if we're going to import malicious prosecution, that waits for a favorable termination? Is it necessary for your argument that we adopt something, if it's the closest analogy, that we adopt? It's not at all necessary, Justice Sotomayor. It is sufficient, and we would certainly win under that. That's part of it. That's our second theory. But our first theory, you're absolutely right, and it's a much more straightforward way of deciding this case, and it tracks Justice Kagan's opinion for the Court in Manuel. Decide narrowly and decide simply that the favorable term, that the common law analogy here is malicious prosecution, and you borrow the limitations rule of malicious  That's all you have to do. Alito, this case has my head spinning, because you were asked to determine when a claim accrues. But I don't know what provision of the Constitution this is based on, and therefore I don't know what the elements of this claim are. And depending on the elements, they may point to different accrual rules, and certainly they might point to different common law analogies. So can you clarify this? You say it's based on the Fourth Amendment, the due process. I don't know whether it's procedural or substantive or both. It's based on the Sixth Amendment. So what's it based on? So, Justice Alito, we agree with the Solicitor General that in this case you don't need to specify, because the Fourth and Fifth Amendment, Fourth and Fourteenth Amendment due process clause swim to exactly the same result. That is, you can have a common law analogy, like malicious prosecution, that covers both Fourth Amendment and Fourteenth Amendment purposes. Well, why do they – I'm not sure they swim to the same result. I'm pretty sure they don't swim at all. The Fourth Amendment usually is satisfied if there's probable cause. So that would seem to suggest that probable cause, the absence of probable cause is an element of your Fourth Amendment claim. Procedural due process requires a deprivation, so that seems to require an element of causation. Substantive due process doesn't require any of that. The Sixth Amendment, I have no idea how that applies here. So you still can't tell me what it's based on? The numbers and emanations from all kinds of – Justice Alito, we have identified the Fourth and Fourteenth Amendments time and time again. The district court says so. The Second Circuit at pages 2, 3, 4, 6, 7, 8 all talk about the due process challenge we make here. And you're absolutely right. There is a little daylight between probable cause, as Justice Sotomayor was saying, and the reasonable probability that a prosecutor wouldn't have done what he did but for the fabricated evidence. But in a case like this, it doesn't matter. We agree that in some hypothetical case there might be a difference. It's just not presented here. And that's why they never made these arguments below. They never made them in the brief in opposition. The first time you're hearing about this delineation is in the red brief. Ginsburg. But we're not talking about hypothetical cases. Is the argument that you're presenting, is it in the end academic because the defendant is the prosecutor and the prosecutor would be immune? Absolutely not. For reasons, again, the Solicitor General said absolute immunity is not before this Court and it hasn't been passed on below. But for two reasons, Justice Ginsburg, we think that's wrong. Number one, it's definitely not academic because even at best, absolute immunity would only protect prosecutors. And as the amici briefs before you talk about, fabrication of evidence claims often adhere against police. And the rule you set here is not investigators. The rule you set here is not just about prosecutors and when claims against them accrue, but when any law enforcement official does. And then second, if there were a remand, we would obviously win because of the probability that a prosecutor, when they fabricate evidence, might introduce that evidence later on, then there is no absolute immunity. And Justice Thomas' opinion in Michaels in 2001 said, quote, that was very likely correct. And it follows from two different opinions of this Court. If I could, it's a similar question to what exactly you're claiming because you had a malicious prosecution claim in the original complaint and that was the one that the courts below dismissed on these prosecutorial immunity grounds. So how is this claim different from that claim? And I guess I had thought that one way it would be different was that this claim is just about the use of fabricated evidence. Is that what you're claiming? And if not that, how is it different from the original malicious prosecution claim? It's as I said at the outset, it's the use and maintenance of the criminal prosecution and that's exactly what the common law has always said. And there's a bazillion cases on this in our brief and the CAC amicus brief at pages 24 to 25. But is that to say that the difference between your two claims was one was about the initiation of proceedings and the other was about the continuation of proceedings? No, they're different. As our prior brief explains, they're different elements. So, for example, for a pure malicious prosecution claim, you actually have to show malice. And that's one reason why, Justice Ginsburg, absolute immunity might exist for a pure malicious prosecution claim. For a fabrication of evidence claim rooted in either the Fourth or Fourteenth Amendment, malice is not actually an element. Rather, you have to show there was a fabrication of evidence that caused the result, the deprivation of liberty. It's just those two elements. That's cases in many different circuits. And so there is a difference between the two and it does have bite, particularly when we deal with something like absolute immunity, because absolute immunity, one of the hearts of it since this Court's decision in 1871 is that this Court won't second-guess the purity of motives of a government official. And obviously, malicious prosecution, qua malicious prosecution, forces a court to do that. So there's a stronger argument. When you allege the fabrication of evidence, you're saying you're not necessarily alleging malice? It's not necessarily an element of the fabrication of evidence claim. That's how every lower court to my knowledge has interpreted it. There still would be some sort of recklessness or some sort of mens rea, but it wouldn't necessarily be the actual malice that malicious prosecution required. So you think that the reckless presentation of evidence that turns out to be false constitutes the fabrication of evidence? That would support your claim? It certainly could, Your Honor. Of course, that's an element of the offense. That's not what's presented here. You granted certiorari on the very limited question of what is the limitations rule for claims like this. And there are all sorts of policy reasons why we think you should adopt a favorable termination requirement, at least as a limitations rule, because it will avoid collateral proceedings and multiplicative proceedings. How do we adopt a favorable termination requirement for purposes of a limitations analysis only? It would seem to me it's either part of the claim or it's not part of the claim. And I would have thought that plaintiffs in your client's position normally would say it's not part of the claim, because it's a higher burden. And it's only because of the happenstance here that we want a longer limitations period, that we want to tack it in and create this rather bespoke tort that we cannot identify where it swims from or to. And I just wonder whether we're kind of coming at this one backwards. And before deciding how long the limitations period is, we ought maybe to take a case where we decide whether it exists and what its elements are, without the complication of addressing the limitations period where litigation interests may be slightly different than they would be in the ordinary case. So Justice Gorsuch, this Court has said several times that there is sometimes daylight between the limitations period and when a cause accrues. Think of Justice Scalia's opinion on Wallace. Pretty unusual, though, right? It is unusual, but Wallace is a very good example of that, particularly footnote 3. And here I think that makes sense. We usually say, though, the limitation period starts to run when all of the elements are present. I mean, everyone learns that in the first year of law school, right? Not where I went to law school. Well, that may be true. That may be true. And maybe not where I went to law school either. But one should learn that in the first year of law school. Can we agree on that? Well, we do agree that is the standard rule. But for claims like this, it actually makes a lot of sense. Think about Wallace. Because in Wallace, the Court said there is daylight. And the reason for that is it cited Section 187 of the Wood Treatise. And that very sentence it cited said, yes, there's daylight, not just for the false imprisonment claim that was at issue in Wallace, but also for malicious prosecution. It's the same sentence. And it makes particular sense here because the reason for malicious prosecution's favorable termination requirement is not really that it's an element of the offense, but rather that it voids all of the policy concerns that we talk about in our brief. So if you look at Keaton's treatise, this is cited in our reply brief at page 8, it says the following. Quote, The requirement of termination is probably a matter of ripeness. I believe the malicious prosecution action should not be tried at a time when we try to chill testimony. It is primarily important not as an independent element. And so when you're dealing with this unique thing, I think this is the right rule. It allows the Court to do, I think, a very narrow, straightforward thing, which is to just say, look, the whole point of the favorable termination requirement is to avoid collateral duplicative litigation, to make sure that we're not chilling defendants who now have to walk out of their Federal criminal trial while it's ongoing and file a lawsuit and possibly risk their Fifth Amendment incrimination rights and resources and distraction and all of that. I mean the ---- Ginsburg What about just staying the civil proceeding until the criminal prosecution is over? Katyal So it's possible, I think, sometimes to stay. But as the government points out, stays are discretionary at the district court. And there have been example after example in which criminal and civil ---- which the civil litigation has not been stayed. And I think it's important to note that the only policy argument they've been able to come up with, Justice Ginsburg, for that stay idea is the idea of faded memories or something like that. But here you've got the government of the United States representing most prosecutors ---- the lion's share of prosecutors saying, no, we're not as concerned about that. And those problems of faded memories occur just as much under their rule because they adopt a discovery ---- they adopt a discovery rule, so it can be years later. And also, this Court's decision in Heck alone will delay many of these claims for anyone who has been convicted. So weighed against whatever you have on faded memory, you've got duplicative litigation, the fact that people in the real world won't file these lawsuits if they're  And that's what this Court requires, and that will lead to less deterrence and undermine the compensatory rationales of Section 1983. What torts would you bring ---- tort suits would you bring under State law on these facts? Under State law, we'd bring something like the tort of malicious prosecution. There is no separate tort. I don't know that there's a fabrication of evidence tort. There may be some criminal remedies or something like that. But one of the points of Section 1983, a historic point, has been to provide a federal remedy, a federal cause of action in cases like this. So there's also ---- we've been really talking about two different theories led by Justice Sotomayor's question. One, decide only the limitations rule. Second, as Justice Gorsuch said, adopt it as an element of the offense. There's also a third theory, the continuing violation theory. We have to win just any one of these. He's got to defeat them all. As Justice Ginsburg said ---- Kagan. Kagan. Kagan. And maybe I'm just being dense here, but I'm still trying to figure out, you said for a state tort it would be malicious prosecution. That was true of your other count in your complaint as well, the one that was dismissed. I mean, this fabrication of evidence claim seems to be, I mean, just a subset of that. You know, there are lots of ways you can bring a malicious prosecution. One is by fabricating evidence. One is by doing something else. How is it a different claim? Well, because I think for 1983 purposes, when this Court does the analysis that you prescribed in Manuel going back to Kerry v. Pifus, you use that as a starting point. You look to the analog, and you can have two different claims, malicious prosecution, a pure one, or fabrication of evidence, that both look back to that common law antecedent, but as a prime. Right. I guess I'm struggling with how it's a different constitutional claim. I understand how there might be two different constitutional claims that would look to the same common law precedent. But how is this a different constitutional claim? Well, there are two different claims here, the Fourth Amendment and the Fourteenth Amendment, as I was saying to Justice Alito. Here I don't think it matters, but I could imagine. No, but I'm talking about you had an account that was dismissed. How is this different from the one that was dismissed? It's different because, as I said earlier, the elements for a fabrication claim, at least for 1983 purposes, are different because they involve – they don't involve malice and things like that. So it's just – that's the way lower courts – But what are the things like that? Because the malice, I don't know. I mean, really? So malicious prosecution requires four things, the initiation or continuation of a criminal proceeding against the plaintiff, termination in the plaintiff's favor, lack of probable cause, and actual malice. And probable cause and malice don't apply to all fabrication of evidence claims. That's the way lower courts have interpreted it. May I reserve? Fabricating evidence, deliberately fabricating evidence isn't malice? It often is. It's just our only point is it's not always. That's all. Thank you, counsel. Mr. Wong. Mr. Chief Justice, and may it please the Court. The party's presentations may make this case seem more difficult than it is. If Petitioner were seeking damages for a conviction based on fabricated evidence, it is clear under heck malicious prosecution would be the most analogous common law toward, and favorable termination would be an element of the 1983 claim. That's heck itself. The same is a fortiori true when Petitioner seeks damages for an indictment based on fabricated evidence. That's not simply akin to malicious prosecution. That's the essence of malicious prosecution at common law, being wrongfully subjected to the criminal process in the first place. Favorable termination is therefore an element of the 1983 claim. The limitations period began to run only upon Petitioner's acquittal. That is, in the government's view, the straightforward and correct way to resolve the case. So it's always an element now. Before, it was sometimes an element. But now it's always an element. Petitioners, I understand Petitioner's first theory to be that it's sometimes an element or you can borrow. It swims in and out. To be clear, that has never been the United States' theory. We disagree with Petitioner's on his first and third theories. Why wouldn't we be better off, before trying to figure out what the limitations period is, actually take a case and figure out whether this tort exists and what its elements actually are? Because even you and the Petitioner cannot agree on the elements of this claim. Well, I guess, Justice Scorsese. And we don't know where it swims from. I don't want to speak for Petitioner. I can tell you what the United States' view is, which is that Petitioner had two claims. He could have brought a Fourth Amendment constitutional claim for a seizure without probable cause, doesn't have to do with malicious prosecution, that's your concurrence in Cordova. That claim is not before you. He's got a common law malicious prosecution claim under New York law if he wants to bring that. His second constitutional claim is a procedural due process claim. It's akin to Eggers or Brady or Giglio. It's no different than if there were perjured testimony. That's not only a Fourth Amendment claim. That's a Fourteenth Amendment claim, that short of a seizure, I have otherwise been deprived of liberty. But there's a great argument for a case in which the matter is actually before us, and your compatriot doesn't agree with you that it's just a procedural due process claim.  Piotrowski. Well, I don't know if there were a circuit score on that or some reasonable disagreement, but the Court has held that there is a procedural due process claim with respect to fabricating evidence to obtain a conviction. The only question then is, well, what if they deprive your liberty in other ways short of a conviction? The courts of appeals have said that's also a Fourteenth Amendment claim. We agree with that, and since the courts of appeals have been uniform on that and there's just this timeliness question, I don't know that the Court needs to get into  It's a merits question, but I'm happy to talk about it. I mean, we think the elements are you've got fabricated evidence, it's material to a deprivation of liberty, no different than if it were a Brady claim or a Giglio claim or an Eggers-Mooney claim. I mean, all of them. So you think that the element also includes favorable termination, and your compatriot doesn't, and we haven't had much consideration of that issue. And for one, I'm not sure I see why it would be an element. I mean, just to put it out there, pretty bad to use fabricated evidence whether you win or you lose, it seems to me. No? Justice Gorsuch, two things. Yes, there is disagreement with us on whether, with Petitioner on whether you incorporate the element. But if you look at Justice Scalia's opinion in Heck, what he was saying was when you're attacking the State judicial process and that doesn't end favorably to you, your remedy for that is habeas. You've got to go get that result set aside before you can bring the damages claim. You're attacking collaterally the conviction, but maybe sometimes you're not. Well, but I think all of the reasons there why you're attacking the State judicial process are why the common law tort, the analogous tort of malicious prosecution, adopted this favorable termination requirement out of respect for the ongoing State criminal proceeding and out of a belief that that was the proper role for habeas, not for damages claim. So I agree with you. Favorable termination is not an element of the constitutional claim. We can prosecute a lying attorney who fabricates evidence and puts it in a trial no matter how the trial ends, but it is an element of the damages claim under 1983. And can I pick up on Justice Kagan's question from earlier? How is a fabricated evidence claim different from a malicious prosecution claim? It would seem every fabricated evidence claim is a malicious prosecution claim, not the reverse. Oh, I think there is overlap in the sense that you'll often have the constitutional claim and you'll have a common law claim, but the elements are different. So as the Court's been exploring, a common law. You think there's a fabricated evidence claim that would not fall within the usual elements of malicious prosecution? Well, in malicious prosecution, you had to show a lack of probable cause. That was the question, whether the prosecutor was proceeding against you without valid legal basis. Under Brady and Giglio and Eggers, it doesn't matter if the government could have proceeded against you on the basis of the evidence before it. Kyle says Brady's not a sufficient to the evidence test. If you don't turn over exculpatory evidence or you introduce perjured testimony, it doesn't matter that a jury could have found you guilty. The question under those cases is materiality. But don't you have to show causation if it's a procedural due process claim? You have to show materiality, Justice Alito. You've got to show under Kyle's a reasonable probability that it affected the outcome. And what's the difference between that and probable cause? I think what Kyle suggests is it's not just a question of whether there was probable cause, that a juror could have found a grand juror to hold you over for trial or a petit juror to convict you on the basis of the evidence. It's could it have had an effect on the proceeding.  A grand juror or a petit juror could have gone either way. A court could easily say, oh, look, there was probable cause to send the person to trial. But you've still, and the Court's held it in Kyle's and later cases, you've still got the procedural due process claim if there is a reasonable probability it affected the outcome. Do you think that there's a possible claim which is just there was an introduction of fabricated evidence that was so awful it's itself a violation of the Constitution, kind of shocks the conscience? We don't think for two reasons, Justice Kagan. One, the Court said it's very reluctant to expand substantive due process because it doesn't have reliable guideposts in the area. And two, as early as Mooney in 1934, looking at a claim of false evidence at trial, the Court said it's procedural due process. And I do think that's the right way to think about it. A prosecutor does something shocking. If there were such a claim, that would not have as an element favorable termination, correct? No. I think we would, even if you said, look, this sounds in substantive due process rather than procedural due process, I think we'd still say, look, that's about something the prosecutor did to you. The common law analogy is malicious prosecution. And despite all your claims that the prosecutor harmed you, if that ended in a conviction, you still got to go to habeas to try to get that set aside before you can start bringing damages claims against the State officials who were involved in the prosecution. But I do think the right way to think about this is procedural due process. What the prosecutor does is shocking. We could, should, and would prosecute that person. But if you, the criminal defendant, haven't suffered a deprivation of liberty as a result. And what is the deprivation of liberty for a person who is not in detention and is going to, and has been acquitted? I think here the obvious one that the Respondent conceded below, so I don't think it's before the Court, is the travel restrictions, the surrendering of the passport and all the rest. Petitioner also points to the having to show up for trial. I'd caution the Court away from relying on that in light of the concession, because there is a circuit split on that, about whether if you're just required to show up to a hearing, that's a deprivation of liberty for Fourteenth or Fifth Amendment purposes. So we'd point to this travel restrictions, and I think Respondent conceded it below so you don't need to get into it. Again, the merits of the claim aren't before the Court. I don't think there's a split on this in the lower courts, but you could take it up on another case. As we understand it, the question here is just, assuming it's procedural due process, how does the limitations period run? I worry about importing the favorable termination rule from malicious prosecution because it has a lot of history behind it, including what counts as a favorable termination. If there is proof that evidence has been fabricated, that it was material in the sense that it made a difference in the proceedings, why should I, as we do in malicious prosecution that has a totally different set of policy principles underlying it, why should we import all that history into this false fabrication claim or tort? So, two things. I understand importing the statute of limitations on a Heck-Prizer principle. I'm talking about why is it necessary to import the same concepts of favorable termination. So, I think that's my problem, Justice Sotomayor, is because when you're looking to the common law, and Heck is clear about this, if you look at pages 484 and 48990 of Justice Scalia's opinion, you're not just kind of borrowing in some loose sense what the common law did. You are looking at the way it did it and asking yourself, should we adopt that? And the common law treated this as an element. So Justice Scalia in Heck said, and the claims there were Brady claims and unfavorable tainted lineup claims, and he said, look, the tort of malicious prosecution of common law had as an element favorable termination in order to prevent ongoing attacks on the State criminal process. We're adopting that element, and so we're saying that the 1983 claim doesn't accrue. And we understand that to be the right way to do this. And then the only question is, we know if the fabricated evidence had been used at trial and there had been a conviction, we know favorable termination would be an element. That is Heck. You could not, and no one disputes that, I think. And then the only question is, well, if you're trying to challenge the front end of the criminal process rather than the back end, should you have a different rule? And we would say no, it's still malicious prosecution is the most analogous tort, and we know from Heck that we do that. Sotomayor It's not quite because you just said to me that the use of fabricated evidence, whether someone's convicted or not, is standing alone wrong. It is wrongful for a prosecutor to do it. You have a constitutional claim, though, only if it results in the deprivation of your liberty, and you have a damages claim only once you can show that the State criminal process that you are attacking has been terminated favorably to you, and that is Heck itself. Sotomayor Why does that matter is what I'm saying to you. If the ill is keep using this evidence, and for some people, using it will result in charges being dismissed before a jury is sworn, but being in the criminal system for a long period of time, why should those people have to show a favorable termination in the same way that malicious prosecution has been defined? Very briefly, Mr. Wall. Wall For all the same reasons, they have to show it when they are attacking any other part of the State judicial process, which is to say the policy reasons that Justice Scalia gave in Heck and that we set forward in our brief. Thank you, Counsel. Mr. O'Connor. Mr. Chief Justice, and may it please the Court, let me tell you, my head has been spinning from this case for a lot longer than yours. What we've heard in parts of these arguments are rather incomprehensible statements. First, we have a pure malicious prosecution as opposed to, I assume, an impure malicious prosecution. It's what? We have. Common law. What common law? The common law crime was most analogous. It's not a malicious prosecution claim. But if we're looking at, the question is what, how would you type it? What is the closest common law claim? There is none. There is no claim in common law when a prosecutor deliberately falsifies evidence in order to convict an innocent person? I think, I'm not sure there is one, and I think that this type of conduct is so stunning and so in contradiction of our basic fundamental policies that it stands alone as a constitutional violation. Now, there are, of course, those criminal cases where after a conviction as a result of perjured testimony, that, of course, is a preeminent due process violation. However, in those cases, and I hark back to Justice Alito's exchange, the word materiality used in those cases is not used in the evidentiary sense. It is used in the proximate cause sense, and that is an element of the analysis in those cases. Ginsburg. Well, you say that if there is a due process claim, it's substantive, and I find that very hard to fathom, because isn't it fundamental fairness? A fundamentally fair trial is what you're entitled to as a matter of procedural due process, and how can your trial be fundamentally fair if the prosecutor has just made up evidence to convict you? Well, I understand your point. I follow the route of shocking the conscience when it comes to categorizing this type of a claim, but I think reasonable people can disagree on where it actually falls. It certainly falls under the due process umbrella. The determination of the court of appeals was correct in this case for two reasons. One, the Petitioner has failed to state a discrete constitutional claim based upon fabricated evidence. This Court has been clear that where a 1983 claim alleges an absence of probable cause, including where fabricated evidence is used, all of the pretrial deprivations of liberty that go hand in hand with the criminal prosecution are encompassed in the Fourth Amendment. I'm not sure I understand your point. You – maybe this is repetitious, but you think there is no cause of action in a situation like this? Let's put the prosecutorial immunity to one side if we're dealing with police fabrication. If – what we have heard and what we have read in the briefs is the mischief that is caused where the parties do not identify, pinpoint the constitutional right involved, even after decades of urging. But do you think there is one? If you were representing the other side, what would you say is the claim? Is there a claim in a case of this sort? There may be a claim under what I perceive to be a substance due process clause. And, well, let's go back to my question. Why is it substance due process when the plaintiff is saying, I was deprived of the most fundamental procedural right, that is to have a fair trial proceeding? Why isn't that evidently procedural due process? Well, of course, you're right. The trial wasn't fair because this atrocious, allegedly atrocious, perjury was committed. But in terms of procedural due process, I think the procedures have not been challenged. It is the dramatic allegation that there was perjury throughout, and the – But it was that what made it a corrupt process. Okay. I'm not going to dispute that with you, Judge Ginsburg. What remains of your argument, if that's true? Pardon me, Judge? If it's a procedural due process violation, what remains of your argument? If you accept Justice Ginsburg's view. It still falls under the 14th Amendment, exclusive of any claims or injuries or deprivations that fall within the Fourth Amendment. All right. So we're there. So how does that affect or not affect the statute of limitations? In the – So it's a procedural due process violation. If it's being used throughout the trial, this fabricated evidence, why doesn't each use and until there's an acquittal constitute either a continuing violation or a finishing of the accrual time? First of all, my view is that it is not a procedural due process violation. I accepted that. But you said that Justice Ginsburg's view you weren't going to argue with. In that scenario, each use would be a violation of the due process clause. And since it's a isolated, distinctive use, it would accrue when it was used and when the defendant had knowledge of it. Mr. O'Connor, is what you're saying, and tell me if I'm wrong about what you're saying, because I might very well be wrong about what you're saying, but I'll just When the claim has as one of its components that there's a deprivation of liberty, then it makes some sense to have a favorable termination date as part – as an element of that claim. But you're suggesting, as I hear you, you're suggesting that there's a claim that doesn't have anything to do with a deprivation of liberty. It arises even without and irrespective of any deprivation of liberty just because of the fabrication itself. And if you had such a claim, that wouldn't really suggest that a favorable termination date is part of the claim, because it has nothing to do with the claim. That's right. The claim is only about the use. It has nothing to do with the deprivation of liberty. Is that what you're saying? That's correct. That claim is indifferent to either probable cause or any termination. But the problem is that the Petitioner says it's not making that claim. It's hard to say what claim the Petitioner is making. It started out with two claims, a malicious prosecution claim and a fabrication of evidence claim. The malicious prosecution claim was dismissed. The Second Circuit affirmed the dismissal, and that dismissal remains unchallenged. So the plaintiff comes along with its – with the claim that it labels fabrication of evidence, but it describes its nature, both in its main brief in the court of appeals and in its reply. It's a quid pro quo. Our original colloquy is not whether this is a malicious prosecution claim. This is a fabrication of evidence in order to convict. What is the closest analogy at common law? And you said there is none in answer to my prior question. If it is – if malicious prosecution isn't the closest analogy, what is? I'm not sure there is a closest analogy. But what I was – Does that mean there is no such claim? Pardon me, Judge? Then there's no – there's no claim. There doesn't have to be a common law analog for there to be a constitutional claim, particularly in this instance where the claim is committing perjury either during the grand jury presentation or during trial. But don't we have to analogize it to something in order to determine what limitation period will apply? I don't think that's necessary, no. Because if it is a self-standing claim that is indifferent to probable cause or favorable termination or any termination, then the presumption is that the standard accrual rule would apply. But as I would – It's a presumption. But in this case, if you let people to bring lawsuits while the criminal trial is going on at the same time, they're bringing a civil lawsuit against some of the people who are heavily involved in the case, and you're going to mix up many cases. And people will watch what they say, or who knows. But there's a pure policy reason for saying, however you characterize this suit, wait till the case is over until you bring it, and therefore the statute of you can't bring it while the case is still going on. I mean, that's basically the argument I got out of these briefs, if I'm right. Okay. What's the answer to that, in your opinion? The Second Circuit acknowledges this type of a claim in limited circumstances. For example, where, although there is sufficient evidence to satisfy probable cause, the 1983 plaintiff alleges that there is unrelated independent evidence that is fabricated. I'm not asking something complicated. I'm just saying whatever you call it, whatever evidence, I don't care. I'm interested in the policy argument that you shouldn't allow a person to bring this claim until the criminal trial is over. And the reason is, a contrary rule risks getting everything mixed up in the criminal trial. That's the, I take it, that seems to be an important argument against what the Second Circuit did. I'm just repeating myself, but I just would like you to deal directly with that kind of question. In both Heck and Wallace. Whatever you want to call it in terms of characterizing the action, I'm not interested in that for the moment. I'm interested in the words that I used, mixed up. In Heck and Wallace, this Court envisioned the criminal case and the civil case being pursued at the same time. And in Wallace, the Court stated that under these circumstances, the district court is in the best position to sift through things and see whether a prudential stay is appropriate. Well, but, I mean, it's still problematic. Even with a stay, you have a complaint. I mean, I think it's, it is a serious concern while the criminal prosecution is going on to say, well, let's file a lawsuit against, you know, the assistant district attorney. And, you know, that might see if that makes him a little less inclined, you know, to enter into a plea agreement or other situations. It does complicate all that's going on in what, for a criminal defendant, falsely accused, as it turns out, is also, is already in a pretty dire place. And I can certainly see that suing the people who are trying to prosecute you may not be the best strategy. Well, in the Second Circuit, the prudential stay has been in use for decades with no untoward results. Well, how do you know that? I mean, by a prudential stay, you mean presumably you have to file a complaint before you can get a stay, right? Yes. Well, then that seems to present most of the problems that are at issue. Sure, you have a stay so you're not taking the depositions of people who are also being testifying in the criminal case, but you do have to spell out your allegations and that can certainly be very prejudicial. Well, I think there are requiring the case, using the traditional accruer rule provides a prompt appraisal of what possible misconduct may be going on. It enables the municipal employers and officials to review it, to investigate and to preserve records. And it is also fair to the plaintiff to be able to pursue this claim, these claims, some of which have nothing to do with the outcome. And therein lies the valuable role of the district court. So I think that it wouldn't – I'd be disappointed if the court sacrificed the correct to the convenient. And there's something to be said for maintaining, particularly in this area where there's a lot of confusion, maintaining an orderly approach to accrual. I'm sorry. If this behavior, if it's true, I'm not assuming anything. If a prosecutor fabricates evidence and you said it's stunning and shocks the conscience, that's how you described it. Yes. Why would we care about how long it would take to seek redress from that prosecutor? Something that shocks the conscience appears to me to be so egregious that we should ensure, even with delayed time, that the victim of that conduct would not be deprived of a day in court because of a hastily imposed statute of limitations. Well, first of all, that would be just an allegation, which is why a prompt investigation would be needed. And it would be only fair to apprise the particular defendants what the need is. Well, it seems to me that most prosecutors in a contested trial know that the defendant is still claiming his or her innocence, and by implication is still claiming that the evidence at the trial, that there's something wrong with it. So it's not as if speed is in the essence in notifying the prosecutor that there's a potential claim there. Well, let me, in this case, after the defendant was acquitted, in this case, he had two years and three months to file this action in a timely manner, embracing both of the claims. So the idea that because you're using the traditional accrual rule that you're putting the defendants back against the wall, as a practical matter, is not true. Well, it may not be true in this case, but depends in other cases when the accrual would occur. I don't think we can establish a rule based on the fact that the individual in this case had two years and three months when other individuals may not have anywhere near that time. Granted. But, Mr. Chief Justice, in any statute of limitations case or issue, you're going to have examples that appear to be unfair. So I — on the other side of that question, if a defendant feels that there is improper conduct, that there is perjury, that there is manufactured evidence, he chooses his remedies, and he is really bound by what the law provides for him. Well, we're trying to figure that out. In a situation like this, you know, it may take a little bit of time to get the pieces of your shattered life because of fabricated evidence pulled together before you can suddenly decide, okay, now we're going to sue the people who did this to me. Well, I understand. You do say something in your brief, I think, that was puzzling. You used to say that an acquittal at trial means that the use of false testimony at that trial didn't deprive him of liberty. You say he's been acquitted, so he's at liberty. But what about his liberty from the time he was indicted through to the end of that trial? Wasn't he deprived of liberty in that interval? Yes, but, again, I think that falls, for the most part, within his Fourth Amendment claim, which was dismissed. So to continue with my argument. But now you're saying he was deprived of liberty, but not for due process purposes, only for Fourth Amendment purposes? I'm sorry, Judge, I couldn't understand. You said he was deprived of liberty by having to undergo a trial. He was deprived of liberty, but you say. I'm not sure that just being compelled to undergo a trial constitutes a deprivation of liberty. What about all the time that he lost? Let's say he's a contractor and he can't take a long-term contract because he might be in prison while the contract would still be running its course. Sure. These complaints fall under the rubric of custody. Custody is a Fourth Amendment concept. And that type of a claim, that type of damage would come under the Fourth Amendment umbrella, under the constitutional division of labor that this Court set forth in footnote 8 of Manuel. I thought that that division of labor was about things that happened prior to judicial process starting and things that happened afterward. No. That, in fact, involved pre-trial deprivations of right up to the time of trial. And, you know, when you read Albright and you read Manuel, I mean, the Court is basically saying to the due process people, stay the heck out of this area. This is occupied by the Fourth Amendment. So the problem that the Petitioner has is most, if not all, of his claim has been dismissed. Look at how he has described the nature of his fabrication of evidence claim in his brief before the Court of Appeals. At his brief, page 4, it is a quintessential malicious prosecution claim. And he says the same thing in his reply, page 2. And then subsequently he says it's based on the initiation of a criminal proceeding based upon fabricated evidence. Your rule could encourage, correct me if I'm wrong, could encourage the filing of 1983 suits while the criminal process is ongoing. At the beginning of your question, Judge, I'm sorry. Your proposed rule for this case could encourage the filing, the routine filing even, of 1983 suits during the midst of the criminal proceedings. Isn't that correct? That is correct. I don't discount that, yes. And that's not a problem, you don't think, in the orderly division of how this should proceed, to have the criminal process come to a conclusion and then, if there's going to be a tort suit, to have that follow on? Why isn't that not a more orderly? It may be more orderly, but it's incorrect. If there's not a legal reason to do it, I would discourage the Court from doing it. If the claim has accrued, if all of its elements are... Well, just if the law is murky and we can choose one path or another reasonably as a matter of law, wouldn't we choose the more orderly, practical approach, which would suggest, I think, let's not encourage the filing routinely of 1983 suits in the midst of the criminal process? It's kind of a loaded question, Judge. Perhaps. Perhaps. I'll grant you that. But I just don't think it's the right way to go. This is an area that could use some rigor. It's kind of a thick... But, well, on the rigor, you say that a stay is routinely granted in the Second Circuit, I believe he said. It is used in the appropriate cases. And doesn't the stay reflect the concept or the idea that it would not be orderly to have these two things going on simultaneously? I think it's more based upon a review of the claims in the specific case. And if the judge feels that, whoa, you know, we better hold things up here because there is a direct conflict and one party may be prejudiced if they continue at the same time. I think that's really where the analysis is. So, basically, the petitioner is asking the court, I know my malicious prosecution case has been dismissed, but I want you to review this claim as though it was a malicious prosecution claim. And in doing so, he is importing elements from a malicious prosecution claim into the analysis of the fabricated evidence claim. Now, two years ago, this court in County of Los Angeles versus Mendez warned that you shouldn't do this. You shouldn't use elements from a discrete 1983 case to assess the validity of an independent and discrete 1983 case. So, I think that because of this tortured argument, importing unrelated elements merely to salvage a time-barred case, it defaces the petitioner's claim, transforming it into something else. And that's why I conclude that the petitioner hasn't really set forth a discrete constitutional claim. Thank you. Four minutes, Mr. Katyal. Thank you, Mr. Chief Justice. I just have one point. Justice Gorsuch, you asked Mr. Wall why decide this case when there's daylight between the government and the petitioner about whether the termination requirement is a necessary element. And we think this court should resolve this because of the massive circuit split that's outlined in the petition and leave open the question of whether it's a mandatory element. And we think so for two reasons. One of the policy concerns that the Chief Justice pointed to, Justice Sotomayor, Justice Breyer, and Justice Kavanaugh, about not wanting to force people to file during their criminal trial. And this is really important. As the amici say, there's a rampant problem of fabrication of evidence. And as Justice Ginsburg says, that's the kind of quintessential due process violation this Court has recognized since Mooney. And the second point, most notably, contrary, Justice Gorsuch, to the premise of your question, it's quite remarkable to actually have the Federal Government agreeing with this former criminal defendant on this issue and saying the policy concerns, as Justice Kavanaugh says, the orderly and practical policy concerns are ones that say that a favorable termination rule, at least in a minimum, should be imported as a limitations rule. That would safeguard the policy concerns, all the different policy concerns that the favorable termination requirement has had at common law. And you then leave for another day. The further question, is it an absolutely mandatory element on the merits? We think that's the simplest way to resolve this case. There are other theories, like continuing violation and the like, and I'm happy to answer any questions on that otherwise. Is what you're arguing for really a form of equitable tolling? Well, I think equitable tolling is different for reasons. It's a different strand, as this Court recognized in that 1985 case, Wilson v. Garcia. But I guess we wouldn't have an objection if the Court wanted to fashion an equitable tolling rule. We don't think you have to here. We think instead you can do what Judge Boggs did in the Sixth Circuit, what Judge Motz did in the Fourth Circuit, and what the Ninth Circuit did as well, and say this first theory, that favorable termination is a limitations rule. Just import that. It tracks Justice Scalia's opinion in Wallace, and leave it at that. Just to clarify from what I'm thinking, what are the elements of your claim? The elements of the claim are the four that I read to you earlier. So it's initiation or continuation of a criminal proceeding, termination of the proceeding, lack of probable cause. Oh, excuse me. Sorry. That's the malicious prosecution for fabrication of evidence. Fabrication of evidence caused a deprivation of liberty. It tracks very much what Mr. Wall had said in his presentation to you. And we agree very much that there is a difference between probable cause and the Fifth Amendment standard. So in every case in which someone is prosecuted, will there not be the deprivation of liberty, under your understanding? Well, there could be some deprivations of liberty, but often not. They could not. They may not have the travel restrictions we point to here. So here, that's the thing. So if they're just released on their own recognizance, then there would be no deprivation of liberty. But if there are any other restrictions, every other case where there are any restrictions imposed, there would be the deprivation of liberty. Well, I think there might or might not. As this case comes to the Court, Petition Appendix 10A says they conceded a deprivation of liberty here.  So really, the only important element is the fabrication of evidence. And causation, which turns out to be crucial in a lot of these cases. Causation of what? So you have to show that the fabrication itself caused the deprivation of liberty. So if, for example, there's a massive amount of other evidence or something like that, then that doesn't cause the deprivation of liberty. Is there enough for the questions? Thank you, counsel. The case is submitted.